■ MARVEL ENTERTAINMENT GROUP, INC., Appellant, v BRAD ELLIOTT, Respondent and Third-Party Plaintiff-Respondent. MICHAEL Z. HOBSON et al., Third-Party Defendants-Appellants.—Order of the Supreme Court, New York County (Phyllis Gangel-Jacob, J.), entered June 7, 1990, which denied the motion by plaintiff and third-party defendants seeking summary judgment on the complaint and dismissal of defendant's counterclaims and third-party complaint, unanimously modified, on the law and the facts and in the exercise of discretion, to the extent of granting plaintiff summary judgment on its replevin action and otherwise dismissing the complaint, and to the extent of dismissing defendant's counterclaims and third-party complaint without prejudice to the maintenance of an appropriate plenary action upon breach of the agreement and, except as so modified, affirmed, without costs.

This action arises out of plaintiff's commission of a work for hire to be completed by defendant in collaboration with a long-term employee of plaintiff, Stan Lee, the only principal of third-party defendant S. L. Productions. The duties of defendant and Lee are not differentiated, and they are collectively designated as the "Supplier" in the written agreement. As originally conceived, the Supplier was to provide written material which would be published by plaintiff as a "History of Marvel Comics". Subsequently, the parties executed a superseding agreement dated April 15, 1988, on the same terms as their original agreement, for the purpose of reflecting that publication would ultimately be undertaken by Simon and Schuster rather than plaintiff. The modified agreement also raised the limit on defendant's reimbursable expenses to $30,000. The agreement was further modified by a letter agreement dated July 6, 1988, countersigned by defendant, which provided that he would receive additional compensation in the amount of $6,000 for "supplemental research and writing for the Work." Nowhere in any of these documents is any timetable for completion of the work or any part thereof set forth.

In October 1988, allegedly due to Simon and Schuster's dissatisfaction with the written material submitted, Stan Lee was terminated from the project. Shortly thereafter, defendant was informed in a telephone conversation that plaintiff was looking for a new writer for the work and that defendant should turn over all of his notes and research materials. While indicating that he considered the termination of Stan Lee to be a breach of the agreement, defendant, in his deposition testimony, conceded that Michael Z. Hobson, plaintiff's group vice-president for publishing, had informed him of plaintiff's intent to pay the royalties specified in the agreement irrespective of who authored the work. The same assurance is contained in Mr. Hobson's affidavit submitted to Supreme Court in support of plaintiff's motion for summary judgment.

The various theories advanced by the parties in support of their claims notwithstanding, this matter constitutes a straightforward contract dispute which is rendered futile in the absence of a demonstrable breach. Plaintiff's contention, in the complaint, that defendant "failed to perform in a timely and reasonable manner" is unsupportable in view of the admission in its pleadings that the contract was terminated because "Simon & Schuster had stated that Stan Lee was not the 'correct writer for the job'." Michael Hobson, at his deposition, made it clear that "Stan was going to be the author and Brad's name was going to be used with something *[sic]*, researched and whatever by Brad Elliott." Plaintiff cannot assert a breach by defendant in the face of the admission that it had terminated the contract because of alleged inadequacies in the writing for which, it concedes, defendant had no responsibility. Plaintiff's assertion that the work was not timely completed is also less than compelling in the absence of any contractual provision governing the submission of drafts by the Supplier.

Defendant's counterclaim for breach is equally devoid of merit. Plaintiff, in its pleadings, has admitted its obligation to pay royalties as specified in the agreement, and defendant concedes that all moneys presently owed to him have been paid. Rather than breaching the agreement, plaintiff has merely waived defendant's duty to submit a satisfactory manuscript as a condition to its obligation to pay royalties under the agreement. The waiver of a right under a contract neither terminates the agreement nor operates as a breach. Under these circumstances, therefore, the question of whether plaintiff can be required to demonstrate that it exercised good

faith in its decision to forego the services of defendant in connection with the proposed literary work simply does not arise *(see, Doubleday & Co. v Curtis,* 763 F2d 495 [2d Cir]; *Dell Publ. Co. v Whedon,* 577 F Supp 1459; *Harcourt Brace Jovanovich v Goldwater,* 532 F Supp 619).

The only substantive issue raised by the various contentions advanced in the pleadings concerns the right to possession of defendant's research. There is a distinction between the ownership of a copyright and the possession of a physical document *(Salinger v Random House,* 811 F2d 90, *reh denied* 818 F2d 252, *cert denied* 484 US 890; *Estate of Hemingway v Random House,* 23 NY2d 341, 346-347). Where, as here, the work to be prepared for publication involves extensive research, the ownership of materials assembled by the author together with any notes and rough drafts is normally governed by the provisions of the contract *(see, e.g., Society of Survivors of Riga Ghetto v Huttenbach,* 141 Misc 2d 921; 1 Nimmer, Copyright § 5.03 [B] [1] [b] [ii]).

In the matter under review, the agreement between plaintiff and the Supplier is silent as to ownership of materials assembled by defendant in the course of the preparation of a manuscript. The agreement is also silent as to the nature of defendant's contribution to the work, whether as writer, researcher or both. It is not disputed, however, that plaintiff has paid defendant for all his expenses in connection with the project, amounting to some $25,000 to $30,000 by defendant's own estimation. Plaintiff has also paid to defendant, again by his own estimation, $31,000 in royalties, repayment of which is not sought in the present action. While the $31,000 paid to defendant for his activities on behalf of the project is characterized as an "advance", the agreement specifically recites that no part of it "shall in any event be repayable to Publisher."

Under the circumstances presented, ownership of the research materials is vested in plaintiff and not defendant based upon an assessment of "the peculiar provisions of the contract, the purpose for which it was made, supplemented by the evidence of the manner in which his work was performed" *(Thompson Co. v Clark,* 109 NYS 700, 702). It is clear from the record on appeal that defendant acquiesced in a course of performance in which he conducted research at plaintiff's expense and direction in return for payment. Defendant cannot retain the benefits of this arrangement and also withhold from plaintiff the material for which he was paid. Concur—Sullivan, J. P., Milonas, Rosenberger, Ellerin and Rubin, JJ.